UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 22-53-DLB-CJS

BMO HARRIS BANK, N.A.                                                                          PLAINTIFF

v.                            **MEMORANDUM OPINION AND ORDER**

V&C TRANSPORT, INC, et al.                                                                     DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

## I.   INTRODUCTION

This matter is before the Court upon a Motion for Default Judgment and Injunctive Relief to Enforce Its Rights to Collect Its Collateral (Doc. # 10) filed by Plaintiff BMO Harris Bank, N.A. ("BMO Harris").  No Defendant has appeared in this case or otherwise responded to BMO Harris' motion, and the time for doing so has passed.  Thus, the motion is ripe for the Court's review.  For the reasons stated herein, the motion will be **granted in part** and **denied in part,** and Judgment will be entered in favor of Plaintiff on Counts III and IV of the Complaint.  (Doc. # 1).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

This case is a collections action by which BMO Harris is seeking to collect on a business loan in default, and to recover the collateral that secured its loan.  (*See* Doc. # 1).  Defendants in this action are V&C Transport, Inc, a Kentucky corporation located in Union, Kentucky, and Carol Duncan, who served as guarantor on a business loan issued by BMO Harris.  (*Id.* at ¶¶ 2-3).  According to the bank, it issued V&C Transport a purchase-money loan in March 2019 to finance the purchase of a 2020 Western Star

1

4900 Series semi-truck. (*Id*. at ¶¶ 10, 12). In exchange for the money to purchase the truck, V&C Transport granted BMO Harris a first-priority security interest in the truck, and the loan was personally guaranteed by Carol Duncan. (*Id.* at ¶ 12; Doc. # 1-4). The bank properly recorded its security interest with the Commonwealth of Kentucky, and thus holds a first-priority lien on the truck. (Doc. # 1 at ¶¶ 12-13).

In October 2021, V&C Transport failed to make its due payment on the truck, and defaulted on the loan from BMO Harris. (*Id.* ¶ 17). In February 2022, the bank accelerated the balance due to the full amount of the loan (as opposed to only the missed payments) and notified V&C Transport and Ms. Duncan that they were to pay BMO Harris $158,966.50 and surrender possession of the truck immediately. (*Id.* ¶¶ 20-21). Under the loan terms, the unpaid balance has continued to accrue interest at 1.5 percent per month, and Defendants are also obligated to pay the attorneys' fees and costs incurred by the bank in collecting on the debt and enforcing its lien. (*Id.* ¶¶ 23-26). After adding fees and expenses, the bank calculated its amount due as "not less than $167,183.80." (*Id.* ¶ 27).

BMO Harris filed this action in April 2022, seeking to collect on the due amount and repossess the truck. (*See id.*). In its Complaint, the bank seeks injunctive relief (Count I), specific performance (Count II), possession of the collateral (Count III), and damages for breach of contract (Count IV). (Doc. # 1). BMO Harris served Ms. Duncan personally in July 2022 (Doc. # 6), and served V&C Transport by certified mail to its registered agent, Virgil Chapman, in May 2022. (Doc. # 8-1 at ¶ 2). Mr. Chapman contacted the bank's attorney in June 2022 and indicated that he would be retaining counsel, but then made no subsequent contact, neither on his own behalf nor through

counsel. (*Id.*). Neither Defendant has entered an appearance in this action, and the deadline for filing answers passed without one being filed by either party. (*See* Doc. # 8). The Clerk of Court entered a default against both Defendants in July 2022, (Doc. # 9), and this motion followed, by which the bank seeks entry of a default judgment. (Doc. # 10).

While the Court will grant the bank's motion in part and award it the default judgment to which it is legally entitled, the Court will also deny the motion to the extent that the bank seeks a permanent injunction and specific performance for the reasons that follow.

## III. ANALYSIS

At the outset, the Court notes that this case is a standard collections action. While such a case being initially being filed in federal court is uncommon, the Court recognizes that by virtue of diversity jurisdiction, it occasionally handles matters that are ordinarily heard in state court. As an out-of-state plaintiff with a claim valued at more than $75,000, BMO Harris has the right to invoke diversity jurisdiction – and so the Court will accordingly adjudicate the case.

However, a case being filed in federal court under diversity jurisdiction does not change the substantive law being applied. In fact, it is well-settled that when a federal court sits in diversity jurisdiction, the outcome of the litigation in the federal court should be "substantially the same" as it would be in the state court. *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945). In *York*, the Supreme Court called that principle "[a] policy so important to our federalism," and even though that case and others interpreting the *Erie* doctrine have evolved over time, core tenets such as that one has remained. *Id.* at 110.

Thus, even though this case was filed in federal court, it is a standard collections action, and Kentucky substantive law will apply to the degree that the outcome in this Court would be "substantially the same" as if the case were filed in Kentucky state court. *Id.* at 109.

### A. Injunctive Relief and Specific Performance

With the aforementioned policy considerations in mind, the Court declines BMO Harris' request for injunctive relief. In its Complaint, the bank writes that it needs a permanent injunction *in addition to* a judgment for possession and damages because of "the mobile nature of the Collateral and its location[.]" (Doc. # 1 ¶ 39). In the instant motion, BMO Harris further attests through an affidavit by its in-house counsel that because the collateral is a semi-truck, it can be moved throughout the country, and that in the absence of injunctive relief, "Plaintiff risks losing the Collateral and will be unable to exercise its bargained for rights under the Agreement, mitigate its damages, or recover its investment." (Doc. # 10-1 at ¶ 30). The bank then states that it "will suffer irreparable injury for which no adequate remedy at law exists" without an injunction to (1) enjoin Defendants from using the truck, (2) ordering Defendants to advise the bank of the truck's location, and (3) ordering Defendants to surrender the truck to Defendants. (*Id.*).

In short, the Court is unpersuaded that BMO Harris will suffer irreparable injury in the absence of an injunction. First, a judgment for possession and damages alone entitles the bank to possession of the truck, which accomplishes the same end as an injunction ordering Defendants to surrender the truck to BMO Harris. Second, while an injunction may make matters easier for the bank by enabling it to self-collect on the collateral without the assistance of a local sheriff or the US Marshals, the Court is not inclined to enter a permanent injunction for that reason alone.

4

Injunctive relief is an "'extraordinary and drastic remedy, . . . never awarded as of right.' Rather, a party must demonstrate the legal factors that necessitate the granting [of injunctive relief.]" *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 638 (E.D. Ky. 2021) (quoting *Munaf v. Geren*, 553 U.S. 674, 690-91 (2008)). To obtain a permanent injunction, a plaintiff must show that (1) it has suffered an irreparable injury, (2) remedies at law are not adequate to compensate for that injury, (3) the balance of hardship between the plaintiff and defendant weighs in favor of a permanent injunction, and (4) that the public interest would not be disserved by a permanent injunction. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010) (quoting *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). In sum, the bank has not provided ample evidence to support any of these factors.

The Court is further unpersuaded by the bank's assertions that it will suffer irreparable harm in the absence of an injunction. The law is clear that an irreparable injury is one that "is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)). This case arises entirely from an amount of money loaned by a bank to a business, and a contract to repay that money. While part of the contract included a security agreement to collateralize the loan by the semi-truck purchased with the money, the loan contract itself exists to ensure that the bank is repaid the money it loaned to Defendants. When Defendants defaulted on the loan, they breached the contract, thus entitling the bank to exercise its available remedies.

5

In Kentucky, "[t]he measure of damages for breach of contract is that sum which will put the injured party into the same position he would have been in had the contract been performed." *Hogan v. Long*, 922 S.W.2d 368, 371 (Ky. 1995) (internal quotations omitted). Thus, notwithstanding other remedies provided by the Uniform Commercial Code, BMO Harris' general measure of damages in this case is to get back the money it loaned to pay for the truck. The bank's security interest in the truck merely serves as an additional guarantee that it will recoup its money, because after all, the bank wishes to repossess the truck so it may sell the truck for proceeds – not because it wishes to keep the truck itself. For these reasons, even though the bank's loan was collateralized, the bank's damages are nonetheless monetary, as the existence of collateral does not make the bank's damages non-monetary in nature.

Furthermore, the bank's difficulty in collecting the collateral does not make its harm irreparable. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999). While some courts have held that "the *prospective* loss of [a secured creditor's] *status quo* security interest" may be considered irreparable harm for purposes of an injunction, *Plainfield Spec. Holdings II, Inc. v. Children's Legal Servs, PLLC*, 634 F. Supp.2d 833, 846 (E.D. Mich. 2009) (emphasis added), the Court is unaware of any controlling case in which a permanent injunction has been issued to assist a bank in collecting collateral.[1] The in-district cases cited by BMO Harris in support of its

---

[1] The Court has located one non-controlling case in which it appears BMO Harris has used a similar strategy, and the Eastern District of Michigan entered the bank's tendered order on default judgment, including language referencing an injunction. *BMO Harris Bank, N.A. v. Lamas Transp. Inc., et al.*, No. 2:20-CV-12632, 2021 WL 9349945, ECF No. 26 at # 366 (E.D. Mich. Oct. 18, 2021) (showing that the entered order was tendered by the bank's counsel). Nonetheless, the decision whether to grant injunctive relief remains at the district court's discretion. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).

assertion that an injunction is warranted both dealt with preliminary injunctions put in place to avoid destruction, concealment, or damaging of collateral in light of potentially fraudulent behavior. *Parton v. Parton*, No. 6:22-CV-18-GFVT, 2022 WL 2292984, at *7-8 (E.D. Ky. June 24, 2022) (discussing how an "asset-freeze preliminary injunction" is necessary in light of a potentially fraudulent conveyance); *West Hill Farms, LLC v. ClassicStar, LLC*, No. 5:06-CV-243-JMH, 2013 WL 12290845, at *1 (E.D. Ky. Aug. 13, 2013) (entering an "asset freeze" due to concerns that "assets will be dissipated" prior to the time of execution).

The facts of this case are distinguishable from *Parton* and *West Hill Farms*. Here, the bank has provided no evidence that Defendants have behaved fraudulently, nor has it provided evidence that the assets are at risk of being "dissipated" or otherwise conveyed before it is able to collect on its judgment. In *Parton*, the court found that the plaintiff was likely to succeed on a fraudulent conveyance claim and recognized that usual collection measures would be in adequate, as the injunction was necessary "to secure [the] judgment while the Court determine[d] whether [the assets] were fraudulently transferred." 2022 WL 2292984, at *8. No such simultaneous determination is being made here. In *West Hill Farms*, the Court noted that the defendants had not responded to post-judgment discovery requests (suggesting fraudulent behavior) and that likewise, "state remedies available to [the plaintiffs] on collecting on the judgment" were unavailable. 2013 WL 11290845, at *1. BMO Harris has not shown any evidence as to how or why usual collection remedies are unavailable to it, nor has it shown any evidence of fraudulent behavior. In that absence, the Court is unable to issue an injunction solely for the purpose of assisting the bank in collecting on an otherwise ordinary judgment.

7

Additionally, the Court notes that while BMO Harris has not briefed on specific performance in its Motion for Default Judgment, it has included a claim for specific performance of the loan contract in its Complaint. (Doc. # 1 at 7). It is well-settled in Kentucky that specific performance can only be ordered in cases where a plaintiff cannot be made whole by monetary damages. *Billy Williams Builders and Devs., Inc. v. Hillerich*, 446 S.W.2d 280, 283 (Ky. 1969). For the reasons previously discussed, the bank's damages in this case are clearly monetary in nature, and remedies to recover those damages are available to the bank under the law.[2] Thus, the Court will decline to grant summary judgment with respect to Counts I and II of the Complaint, referencing injunctive relief and specific performance.

### B. Default Judgment

BMO Harris has also moved for default judgment to be entered against Defendants on its claims relating to default of the loan agreement. (Doc. # 10). As previously stated, the Clerk of Court has made Entries of Default with respect to both Defendants. (Doc. # 9). The Court's entry of Judgment, however, determines the specific damages to which a plaintiff is entitled, and the determination depends on whether the damages are calculable or liquidated. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). In cases where damages are not liquidated, a default judgment only admits liability, and "the amount of damages must be proved." *Id*. Liquidated damages "are those made certain or fixed by agreement of parties, or by operation of law." *Weaver v.*

---

[2] The Court additionally notes that the bank's usage of "specific performance" seems to be a repackaging of its claim for injunctive relief. If the Court were to "direct[] Borrower to perform its obligations under the Agreement," it would be directing Defendants to resume making payments, as Defendants' obligations ended under the contract after the bank declared it to be in breach. The bank's rights to remedy the breach are not the same as Defendants' obligations to perform, to which specific performance applies.

*Caldwell Tanks, Inc.*, 190 F. App'x 404, 414 (6th Cir. 2006). Here, because the damages are clearly established by financial contracts, including a promissory note, security agreement, and guarantor's agreement, the damages are clearly liquidated, including attorney's fees and interest, which are provided for in the contracts. (*See* Doc. # 1-2). Thus, a hearing to determine damages is unnecessary, and BMO Harris' Motion for Default Judgment will be granted in part, with respect to Counts III and IV of the Complaint.

### C. Attorney's Fees

Lastly, the bank has requested that the Court "stay the filing period for a motion requesting fees . . . until such time as possession of the Collateral is obtained." (Doc. # 10 at 5). Because the loan agreement provides for the payment of fees and costs (Doc. # 1-2 at 4), the Court will grant the bank's request to stay the filing period.

### IV. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) BMO Harris Bank, N.A's Motion for Default Judgment as to Defendants and Injunctive Relief to Enforce Its Rights to Collect Its Collateral (Doc. # 10) is **GRANTED IN PART** with respect to Counts III and IV of the Complaint, and is **DENIED IN PART** as to the remaining claims;

    (a) Count I (Injunctive Relief) and Count II (Specific Performance) of the Complaint (Doc. # 1) are accordingly **DISMISSED**;

(2) An accompanying Judgment will be entered contemporaneously herewith;

(3)     The deadline for filing a Motion for Attorney's Fees under Federal Rule of Civil Procedure 54(d) and Local Rule 54.4 is generally **STAYED** pending BMO Harris' collection of the collateral, subject to subsequent orders by the Court; and

(4)     If no Motion for Attorney's Fees has been filed within **thirty (30) days** of the date of entry of this Order, BMO Harris shall file a **status report** apprising the Court of progress on its collection efforts.

This 24th day of October, 2022.



Signed By:
*David L. Bunning*  DB
United States District Judge

https://fedcourts-my.sharepoint.com/personal/gammon_fain_kyed_uscourts_gov/Documents/22-53 MOOre Default.docx